IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-143-FL

| | | |
|---|---|---|
| JUDITH CARTRETTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TIME WARNER CABLE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment, made pursuant to Federal Rule of Civil Procedure 56. (DE 17). The issues raised have been briefed fully, and in this posture are ripe for ruling. For the reasons that follow, defendant's motion for summary judgment is denied.

## STATEMENT OF THE CASE

Plaintiff Judith Cartrette commenced this action against defendant Time Warner Cable, Inc. on March 10, 2014. (DE 1). In the complaint, plaintiff alleged defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by using an automated telephone dialing system and an artificial or prerecorded voice to call plaintiff's cell phone regarding an alleged debt. In its answer, defendant denied violating the TCPA and raised a number of defenses. (DE 13).

On March 27, 2015, defendant filed the instant motion for summary judgment, pursuant to Rule 56. (DE 17). In support of the motion, defendant relies upon a supporting memorandum (DE 19), an unsigned copy of defendant's standard services agreement (DE 18-1), and a declaration by

defendant's employee, David Zitko. (DE 18). In its supporting memorandum, defendant argues that it is entitled to judgment as a matter of law on the bases that: the TCPA and defendant's services agreement afforded plaintiff no right to revoke her prior consent to receive defendant's telephone calls; defendant did not use an automated telephone dialing system ("ATDS"); and the content of defendant's calls fell outside the scope of the TCPA.

Plaintiff filed a response on May 4, 2015 (DE 24), attaching plaintiff's own declaration (DE 24-1), as well as a deposition transcript of Zitko, as taken in a different case involving defendant. (DE 24-2). Plaintiff opposes all three bases for defendant's summary judgment motion. In addition to opposing defendant's second basis regarding the definition of ATDS, plaintiff also argues that defendant called her using an artificial or prerecorded voice.

Defendant replied on June 4, 2015, reasserting its arguments that plaintiff could not revoke her consent under the TCPA and services agreement, and that defendant did not use an ATDS in calling plaintiff. (DE 27). The reply does not address plaintiff's contention that defendant used an artificial or prerecorded voice.

Most recently, on July 10, 2015, plaintiff filed notice of suggestion of subsequently decided authority (DE 28), and attached a copy of a decision of the United States District Court for the Southern District of New York (DE 28-1), <u>King v. Time Warner Cable</u>, __ F. Supp. 3d. __, 2015 WL 4103689 (S.D.N.Y. July 7, 2015).

**STATEMENT OF FACTS**

In 2013, plaintiff requested that defendant install cable services at her home in Fuquay-Varina, North Carolina. (DE 18 ¶ 12). Defendant establishes relationships with residential customers through its residential services subscriber agreement ("services agreement"), which

2

includes a paragraph titled, "Robo-Calls," stating: "[Defendant] (or persons acting on our behalf) may use automated dialing systems or artificial or recorded voices to contact you or leave you messages if you do not answer."  (DE 18 ¶ 13; DE 18-1 ¶ 12(b)).  Sometime thereafter, plaintiff agreed to subscribe to defendant's service.  (DE 18 ¶ 14).  While doing so, plaintiff provided defendant with her cell phone number.  (Id.; DE 24-1 ¶ 2).

In October 2013, defendant began calling plaintiff's cell phone regarding an unpaid installation fee.  (DE 18 ¶ 15).  Plaintiff disputed the debt, and during a live telephone conversation on January 14, 2014, plaintiff instructed defendant to cease all calls to her cell phone.  (DE 24-1 ¶ 5; see DE 18 ¶ 15).  However, between January 29 and February 11, 2014, plaintiff received on her cell phone six additional calls from defendant, four of which she answered and two of which were voicemail messages.  (DE 18 ¶ 15).  Approximately one month thereafter, on March 10, 2014, plaintiff brought this action against defendant.  (DE 1).

Defendant called plaintiff using its proprietary communication system, the Outbound Enterprise Interactive Voice Response (the "IVR").  (DE 18 ¶ 15).  The IVR was integrated with defendant's billing system, which contained information about defendant's customer accounts, including customers' telephone numbers.  (Id. ¶ 5).  Each day, the IVR reviewed the billing system to identify overdue accounts and call the telephone numbers associated with those accounts.  (Id.).  If a call was not answered, the IVR left a voicemail message asking the customer to return the call.  (Id.).  If a call was answered, the IVR played a message asking to speak with the account holder, and if the call recipient indicated that she was the account holder then the IVR played another message providing information about the overdue account.  (Id. ¶¶ 6–7).

Zitko oversaw operation of the IVR during the relevant time period.  (DE 18 ¶ 2).  In his

3

declaration, defendant states that "[t]he IVR has never had the capacity to produce or store telephone numbers using a random or sequential number generator. Rather, the IVR calls only phone numbers stored in [defendant]'s billing system . . . that meet specified parameters." (Id. ¶ 10). In addition, he states that "[t]he IVR has never dialed telephone numbers in a manner that 'predicts'—based on complicated algorithms—when a call recipient will answer the telephone so a live call center agent will be available to take the call." (Id. ¶ 11). Instead, Zitko explains, "[t]he IVR only calls the phone numbers from [defendant]'s billing system, occasionally plays messages, and enables customers to interact with [defendant]'s billing system through the IVR, including speaking with a live [ ] representative." (Id.).

## COURT'S DISCUSSION

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id.

4

at 249. Similarly, "[c]redibility determinations . . . are jury functions, not those of a judge." Id. at 255. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id.; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B. Analysis

1. Revocation of Prior Express Consent

Plaintiff claims defendant committed six violations of 47 U.S.C. § 227(b) through calls placed to her cell phone between January 29 and February 11, 2014. Defendant seeks summary judgment regarding the issue of revocation of prior consent on two bases: first, that the TCPA does not provide plaintiff the right to revoke her prior consent to autodialed calls; and second, that the parties' services agreement precludes such revocation. Plaintiff counters that she revoked her prior consent through oral instructions to defendant on January 14, 2015, as well as through 17 subsequent calls to defendant.

47 U.S.C. § 227(b) imposes liability on the following basis:

> It shall be unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, . . . or any service for which the called party is charged for the call.

§ 227(b)(1)(A)(iii). The statute thus excludes those calls made with "prior express consent of the called party." Id. Accordingly, prior express consent is an affirmative defense to liability under the TCPA, as asserted by defendant here. See, e.g., Snow v. Glob. Credit & Collection Corp., No. 5:13-CV-721-FL, 2014 WL 5781439, at *5 (E.D.N.C. Nov. 6, 2014).

With respect to revocation of prior express consent, the Federal Communications Commission ("FCC") recently issued a Declaratory Ruling and Order ("2015 FCC Ruling"), clarifying that under the TCPA "[c]onsumers have a right to revoke consent, using any reasonable method including orally or in writing. Consumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller." In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991, 30 FCC Rcd. 7961, 7996 ¶ 64, 2015 WL 4387780 (2015) [hereinafter 2015 FCC Ruling].

The Hobbs Act, 28 U.S.C § 2342(1), and the Federal Communications Act, 47 U.S.C. § 402(a), operate together to restrict district courts from invalidating certain actions by the FCC. 28 U.S.C. § 2342 ("The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of [ ] all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." ); see Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 969 (2005) (holding that, because the FCC is authorized to promulgate binding legal rules and it "issued the order under review in the exercise of that authority," the FCC's interpretation of the Communications Act was entitled to Chevron deference);

6

United States v. Mead Corp., 533 U.S. 218, 226–27 (2001) (deferring to a federal agency, "given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires"); Penn v. NRA Grp., LLC, No. JKB-13-785, 2014 WL 2986787, at *3 (D. Md. July 1, 2014) ("This Court agrees . . . that the district courts have no authority to annul the effect of FCC rulings.") (collecting cases). Therefore, "[r]egardless of whether this FCC interpretation of the TCPA is entitled to Chevron deference, this Court lacks jurisdiction to review its validity." Sacco v. Bank of Am., N.A., No. 5:12-CV-6-RLV, 2012 WL 6566681, at *9 (W.D.N.C. Dec. 17, 2012) (quotations omitted) (referring to a FCC ruling interpreting the "prior express consent provision" of the TCPA). Accordingly, the court accepts as valid the 2015 FCC Ruling as a "final order" for purposes of 28 U.S.C. § 2342(1) because it was the agency's final decision interpreting the "prior express consent" provision of the TCPA, and it determines legal rights and obligations. See Am. Trucking Ass'n, Inc. v. United States, 755 F.2d 1292, 1296 (7th Cir. 1985); Sacco, 2012 WL 6566681, at *9. However, the matters of interpreting and applying the FCC's rulings remain within the province of the court. Sacco, 2012 WL 6566681, at *9 n.8.

Although the Fourth Circuit Court of Appeals has not addressed revocation of consent in this context, the Third and Eleventh Circuit Courts of Appeals have aligned themselves with previous rulings of the FCC in holding that consent is revocable under the TCPA. Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 270 (3d Cir. 2013); Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1255 (11th Cir. 2014); see In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991, 27 F.C.C. Rcd. 15391, 2012 WL 5986338 (2012) [hereinafter 2012 FCC Ruling]. "District Courts grappling with the issue have come out with varying conclusions, . . . . [but] [i]t appears a

majority of courts conclude that consent may be revoked under the TCPA." Hitchman v. Nat'l Enter. Sys., Inc., No. 12-61043-CIV, 2014 WL 912363, at *2 (S.D. Fla. Mar. 10, 2014) (collecting cases).

In cases involving revocation of consent under the TCPA, a consumer complaining about unwanted telephone calls often has a contractual relationship with the company placing those calls. Skinner v. Bluestem Brands, Inc., No. 3:14-CV-256-CWR-FKB, 2015 WL 4135269, at *2 (S.D. Miss. July 8, 2015) (collecting cases). When a consumer enters into a contract with a service provider, the contract may require that the consumer provide her telephone number and consent to receiving automated or prerecorded calls. See id. Provision of a cell phone number demonstrates express consent by the cell phone subscriber to be contacted at that number. See Snow, 2014 WL 5781439, at *5 (citing In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991, 23 F.C.C. Rcd. 559, 564 ¶ 9, 2008 WL 65485 (2008) [hereinafter 2008 FCC Ruling]); Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1042 (9th Cir. 2012).

However, such a contract does not prevent a consumer from revoking her prior express consent pursuant to the TCPA. See Gager, 727 F.3d at 273–74 ("The fact that [plaintiff] entered into a contractual relationship with [defendant] did not exempt [defendant] from the TCPA's requirements. . . . [Plaintiff] retained the right to revoke her prior express consent."); Osorio, 746 F.3d at 1255; Skinner, 2015 WL 4135269, at *3–4; Berg v. Verizon Wireless, No. 13-CV-1-BBC, 2013 WL 8446598, at *1 (W.D. Wis. June 21, 2013); see Brenner v. Am. Educ. Servs., 575 Fed. App'x 703, 703 (8th Cir. 2014). In support of this conclusion, courts have reasoned that use of an ATDS is not an essential term of an agreement, and that parties lack legal authority to contract around rights provided by the TCPA. See Gager, 727 F.3d at 273–74; Skinner, 2015 WL 4135269,

8

at *3.

For example, in Skinner, the plaintiff provided the defendant with her cell phone number and signed a contract containing the following language: "You expressly consent to receiving calls and messages, including autodialed and prerecorded message calls, from . . . [defendant], at any telephone numbers that you have provided." 2015 WL 4135269, at *2. Later, the plaintiff orally revoked her consent during a live telephone call with the defendant, but the defendant argued that her revocation was ineffective in light of their contract. Id. at *1–2. The court found the defendant's argument unpersuasive where the plain language of the contract did not address revocation of consent, the ATDS clause was not negotiable, the plaintiff was not represented by counsel at the time of signing, and the defendant failed to cite any legal authority permitting it to contract around the TCPA. Id. at *3.

Here, the parties agree that plaintiff gave her prior express consent to receive calls from defendant's IVR. Plaintiff provided defendant with her telephone number in the process of accepting defendant's services agreement, which contained the following clause: "We [defendant] (or persons acting on our behalf) may use automated dialing systems or artificial or recorded voices to contact you or leave you messages if you do not answer." (DE 18-1 ¶ 12(b)). Defendant does not dispute that plaintiff instructed defendant to discontinue telephone calls regarding the disputed debt. However, defendant disputes whether such instructions effected a valid revocation under the TCPA and the services agreement.

In light of the 2015 FCC Ruling and existing case precedent, this court is compelled to hold that there is a genuine issue of material fact regarding whether there is a genuine issue of material fact concerning whether plaintiff's instructions to defendant constituted a valid revocation. See

9

2015 FCC Ruling, 30 FCC Rcd. at 7996 ¶ 64 (permitting oral revocation "in response to a call initiated or made by a caller"); Gager, 727 F.3d at 268, 270 (holding that, under the TCPA, there is no temporal limitation on a consumer's right to revoke her prior consent to be contacted via an ATDS on her cell phone); Osorio, 746 F.3d at 1255 (holding that the TCPA provides the right to revoke consent, and reversing the lower court partly due to insufficient factual evidence of whether the plaintiff effectively revoked prior consent).

Defendant's position that the TCPA affords no right to revoke consent is thus ill-founded, where defendant's motion was filed without benefit of the recent 2015 FCC Ruling, and where defendant's argument relies upon a handful of non-binding district court opinions that themselves acknowledge other courts' recognition of revocation. For example, the court in Chavez v. Advantage Grp., 959 F. Supp. 2d 1279 (D. Colo. 2013), highlighted disagreement among district courts through its reference to at least four countervailing opinions allowing revocation under the TCPA. Id. at 1282. Another of defendant's supporting cases, Saunders v. NCO Fin. Sys., Inc., 910 F. Supp. 2d 464 (E.D.N.Y. 2012), ascribed the split among authorities to courts "apply[ing] their own policy preferences." Id. at 469. In finding no right to revoke under the TCPA, the court in Saunders relied upon Gager v. Dell Financial Services, LLC., No. 3-11-CV-2115, 2012 WL 1942079 (W.D. Pa. May 29, 2012), vacated, 727 F.3d 265, a case the Third Circuit Court of Appeals later vacated and remanded on precisely that ground. Saunders, 910 F. Supp. 2d at 468–69; see Gager, 727 F.3d at 272, 274. The validity of such cases now further is called into question by the 2015 FCC Ruling.

Defendant's other argument, that its services agreement prevented plaintiff's revocation under the TCPA, also lacks legal support. Defendant attempts to distinguish its services agreement

10

from courts' readings of other contracts on the basis that it contains a clause explicitly addressing autodialing. However, that is a distinction without a difference where consumers' provision of their telephone numbers represents the same express consent as their signature on a contract. Defendant relies on a number of North Carolina cases concerning contract modification and waiver, but these cases are inapposite in the context of the TCPA, where courts have found that such contracts do not negate consumers' statutory rights to revoke prior express consent. See Gager, 727 F.3d at 273–74; Osorio, 746 F.3d at 1255.

Defendant's only legal authority to the contrary on this issue, Hudson v. Sharp Healthcare, No. 13-CV-1807-MMA, 2014 WL 2892290 (S.D. Cal. June 25, 2014), is distinguishable in that the plaintiff there failed to revoke her prior consent by contract because she returned the defendant's telephone calls, "engaged in a cooperative dialogue with [defendant]," and indicated no unwillingness for defendant to continue its calls. Id. at *9. No such facts were present here. Plaintiff alleges that she "advised [defendant] that the calls were annoying and she did not want to be called by [defendant], and instructed [defendant] to cease all calls," and she repeated this request in 17 subsequent calls to defendant. (DE 1 ¶ 9; DE 24-1 ¶ 6).

Furthermore, the services agreement at issue here resembles the contract language construed in Skinner, and it fails to preclude plaintiff's right to revoke for similar reasons. See 2015 WL 4135269, at *2–4. The plain language of the services agreement is silent with respect to revocation of consent to autodialed and prerecorded voice calls; defendant presented an unsigned, form copy of the agreement, which it uses for all of its customers, and the terms appear not to be negotiable; and use of an autodialing system is not an essential term of the agreement. See id. at *3.

For these reasons, and for those described previously in this section, defendant's arguments

11

fail where plaintiff exercised a valid right to revoke her prior express consent pursuant to the TCPA. See Gager, 727 F.3d at 273–74; Osorio, 746 F.3d at 1255; 2015 FCC Ruling, 30 FCC Rcd. at 7996 ¶ 64.

Accordingly, defendant is unable to establish a right to summary judgment on the defense of prior express consent. See § 227(b)(1)(A).

    2.    Automatic Telephone Dialing System

Defendant contends that the IVR does not fall within the definition of ATDS because its present capacity did not include the ability to use a random or sequential number generator. Plaintiff disagrees, pointing to the IVR's present and potential ability to dial telephone numbers from a preprogrammed calling list without human intervention.

The TCPA prohibits use of an automatic telephone dialing system ("ATDS") to call a cell phone number. § 227(b)(1)(A)(iii). "The term 'automatic telephone dialing system' means equipment which has the capacity[ ] (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1). "[T]his definition covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." 2012 FCC Ruling, 27 F.C.C. Rcd. at 15391 n.5. Reaffirming this definition in 2015, the FCC clarified that "the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." 2015 FCC Ruling, 30 FCC Rcd. at 7972 ¶ 10, 7974 ¶ 16.

Potential functionalities encompass "hardware, [that] when paired with certain software, has the capacity to store or produce numbers and dial those numbers." Id. at 7978 ¶ 24. The FCC

12

specified that, "even when dialing a fixed set of numbers, equipment may nevertheless meet the autodialer definition." Id. at 7923 ¶ 12. In sum, "the TCPA's unqualified use of the term 'capacity' was intended to prevent circumvention of the restriction on making autodialed calls to wireless phones." Id. at 7973 ¶ 14. For the reasons noted in the previous section, the court accepts the FCC's rulings on these issues, and accordingly it focuses on the tasks of interpreting and applying those rulings' relevant portions.

Following the 2015 FCC Ruling, courts have aligned their definitions of ATDS with that of the FCC. See, e.g., Dominguez v. Yahoo, Inc, __ Fed. App'x __, 2015 WL 6405811, at *2 (3d Cir. Oct. 23, 2015); Derby v. AOL, Inc., No. 5:15-CV-452-RMW, 2015 WL 5316403, at *3–4 (N.D. Cal. Sept. 11, 2015); Luna v. Shac, LLC, __ F. Supp. 3d __, 2015 WL 4941781, at *2–4 (N.D. Cal. Aug. 19, 2015); King, 2015 WL 4103689, at *4. Other courts have arrived at the same definition through interpretations of previous FCC rulings. See Lardner v. Diversified Consultants, Inc., 17 F. Supp. 3d 1215, 1222 (S.D. Fla. 2014) ("Many other courts, including this Court, have followed the FCC's interpretation that automated dialing systems that automatically dial cell phone numbers from a preprogramed list . . . are 'automatic telephone dialing systems' under the TCPA.") (collecting cases).

By virtue of its capacities and functioning, the IVR qualifies as an ATDS. Each day, the IVR reviewed defendant's billing system and automatically compiled a list of telephone numbers. (DE 18 ¶ 5). The IVR did not have the capacity to generate a list of numbers using a random or sequential number generator; instead, it employed an algorithm to locate numbers associated with overdue customer accounts. (Id. ¶¶ 5, 10–11). Once identified, the IVR called the numbers associated with those accounts and played a prerecorded message. (Id. ¶¶ 5–6). If a customer

13

answered, she could respond to the IVR's message by entering a series of numbers, which in turn caused the IVR to play other prerecorded messages. (Id. ¶¶ 6–7).

In this manner, defendant's IVR had the "capacity" to "store" and "dial" numbers as those terms are used in § 227(a)(1). Defendant acknowledges that the "IVR is integrated with [defendant]'s billing system," and that the IVR "calls the phone numbers associated in the billing system with those accounts." (DE 18 ¶ 5). In this integrated system, the IVR represented hardware that, when paired with the billing system software, had the capacity to store and dial a list of telephone numbers. Cf. 2015 FCC Ruling, 30 FCC Rcd. at 7978 ¶ 24 (including within "the definition of an autodialer . . . hardware [that], when paired with certain software, has the capacity to store or produce numbers and dial those numbers") (quotations omitted). Furthermore, defendant's system stored and dialed numbers "without human intervention." See id. at 7975 ¶ 17; 2012 FCC Ruling, 18 FCC Rcd. at 14092 ¶ 132. Therefore, defendant's IVR was an ATDS as that term is used for purposes of the TCPA. See § 227(a)(1).

In denying that its IVR was an ATDS, defendant focuses upon the IVR's present capacity. Defendant also argues that the IVR's inability to use a random or sequential number generator removed it from the definition of ATDS. Defendant's authority for its arguments, however, is inapposite. Its first case, De Los Santos v. Millward Brown, Inc., No. 13-80670-CV, 2014 WL 2938605 (S.D. Fla. June 30, 2014), analyzed the term ATDS in the context of a claim alleging unconstitutional overbreadth, and the court relied upon a definition of "capacity" found in Dominguez v. Yahoo, Inc., 8 F. Supp. 3d 637 (E.D. Pa. 2014), vacated, 2015 WL 6405811. Id. at *6. Not only was that court's analytical framework distinguishable from the case at hand, but its reliance on the "present capacity" definition from Dominguez became unsound when the Third

14

Circuit Court of Appeals vacated and remanded that case to reconsider "what is meant by the word 'capacity' . . . . in light of the 2015 FCC Ruling." Dominguez, 2015 WL 6405811, at *3.

Defendant's two other supporting cases, Gragg v. Orange Cab Comp., Inc., 99 F. Supp. 2d 1189 (W.D. Wash. Feb. 7, 2014), and Hunt v. 21st Century Mortgage Corp., No. 2:12-CV-2697-WMA, 2013 WL 5230061 (N.D. Ala. Sept. 17, 2013), both arrived at a "present capacity" reading of § 227(a)(1) in part because they feared that adopting the definition of "potential capacity . . . would capture many of contemporary society's most common technological devices within the statutory definition." Gragg, 995 F. Supp. 2d at 1192–93; Hunt, 2013 WL 5230061, at *4 ("[Given] the possibilities of modification and alteration . . . . [are] iPhone users subject to the mandates of § 227(b)(1)(A)?"). However, the 2015 FCC Ruling considered and dismissed such arguments: "[T]here is no evidence in the record that individual consumers have been sued based on typical use of smartphone technology. . . . We have no evidence that friends, relatives, and companies with which consumers do business find those calls unwanted and take legal action against the calling consumer." 2015 FCC Ruling, 30 FCC Rcd. at 7977 ¶ 21.

Defendant's other argument, that the IVR's lack of a random or sequential number generator removes it from the definition of ATDS, similarly fails to consider FCC guidance. Although defendant cites some district court opinions that differ, the FCC and other courts consistently have ruled that the definition of ATDS includes dialing equipment that has the capacity to store and dial numbers from a preprogrammed list without human intervention. 2015 FCC Ruling, 30 FCC Rcd. at 7971–72 ¶ 10; 2012 FCC Ruling, 27 FCC Rcd. at 15392 n.5; 2008 FCC Ruling, 23 FCC Rcd. at 566 ¶ 12; In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14091 ¶ 131, 2003 WL 21517853 (2003); see Dominguez, 2015 WL

15

6405811, at *2; Lardner, 17 F. Supp. 3d at 1220; Derby, 2015 WL 5316403, at *3.

Defendant also relies upon the deposition of its employee, Zitko, who states: "The IVR has never had the capacity to produce or store telephone numbers using a random or sequential number generator. Rather, the IVR calls only phone numbers stored in [defendant]'s billing system." (DE 18 ¶ 10). In Dominguez, the Third Circuit Court of Appeals considered the same argument supported by similar evidence, where the defendant's expert stated that "[t]he servers and systems affiliated with the [autodialer] did not have the capacity to store or produce numbers to be called, using a random or sequential number generator, and to call those numbers." 2015 WL 6405811, at *3. The court rejected that argument as a "legal conclusion couched as a factual assertion," and consequently vacated the district court's entry of summary judgment. Id. at *3–4. Recently, in King, another district court heard a different plaintiff's TCPA claim against defendant. 2015 WL 4103689. Relying in part on the 2015 FCC Ruling, the court in King dismissed defendant's argument regarding random number generation and found the same IVR at issue here to be an ATDS under § 227(a)(1). Id. at *4.

For these reasons, and for the reasons described previously in this section, the court rejects defendant's argument that it is entitled to summary judgment on the basis that its IVR is an ATDS for purposes of the TCPA, and the court finds defendant's argument without merit. Defendant's argument that it is entitled summary judgment on that basis is without merit. See § 227(a)(1).

3. Artificial or Prerecorded Voice

Independent of its prohibition on telephone calls made using an ATDS, the TCPA imposes liability on parties that use an artificial or prerecorded voice to call a cell phone without prior consent. § 227(b)(1)(A)(iii); see Wallace v. Optimum Outcomes, Inc., No. 5:13-CV-277, 2015 WL

627944, at *5 (E.D.N.C. Feb. 12, 2015). "IVR" is an abbreviation for the term "interactive voice response." Zitko explained that defendant's IVR played a variety of prerecorded voice messages when it called customers, and plaintiff verified that she heard prerecorded voice messages when she answered calls from defendant. Specifically with regard to plaintiff, Zitko stated that all six of the IVR's calls made to plaintiff after her oral revocation of consent played prerecorded voice messages. Accordingly, defendant does not dispute that in calling plaintiff it played prerecorded or artificial voice messages through its IVR.

Therefore, independent of this court's determination regarding defendant's use of an ATDS, plaintiff has established a genuine issue of material fact that defendant's IVR satisfies § 227(b)(1)(A) through its use of prerecorded voice messages.

    4.    Scope of the TCPA

Defendant argues that the content of its calls to plaintiff fell outside the scope of the TCPA because its calls pertained to plaintiff's alleged overdue account, not to telemarketing content prohibited by the TCPA. However, the TCPA prohibits "any call . . . using an automatic telephone dialing system or an artificial or prerecorded voice." § 227(b)(1)(A) (emphasis added). "[T]his prohibition applies regardless of the content of the call." 2008 FCC Ruling, 23 FCC Rcd. at 565 ¶ 11.

In particular, "debt-collection calls are not exempt from 47 U.S.C. § 227(b)(1)(A)(iii); they are exempt only from 'the TCPA's separate restrictions on "telephone solicitations."'" Osorio, 746 F.3d at 1255 (quoting 2008 FCC Ruling, 23 FCC Rcd. at 565 ¶ 11). The statute permits calls made for a commercial purpose pursuant to an established business relationship, but that exemption only applies to autodialed calls made to land-line telephones, not cell phones. See 47 C.F.R. §

17

64.1200(a)(2); Gager, 727 F.3d at 273; Lynn v. Monarch Recovery Mgmt., Inc., 586 Fed. App'x 103, 103–104 (4th Cir. 2014) (rejecting argument seeking to avoid liability on the basis that the defendant was a debt collector); Beiler v. GC Servs. L.P., No. 1:13-CV-869, 2014 WL 5531169, at * 4 (M.D.N.C. Nov. 3, 2014) ("[T]here are clear exemptions for autodialed debt-collection calls to residential landlines, but not for autodialed debt-collection calls to cell phones.").

The content of defendant's automated calls to plaintiff is irrelevant for purposes of liability under the TCPA. See 2008 FCC Ruling, 23 FCC Rcd. at 565 ¶ 11. Moreover, calls concerning plaintiff's disputed debt were analogous to debt-collection calls, which fall within the scope of the TCPA. Therefore, defendant's reliance on Emanuel v. Los Angeles Lakers, Inc., No. CV-12-9936-GW(SHx), 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013), and Ryabyshchuck v. Citibank (South Dakota) N.A., No. 11-CV-1236-IEG (WVG), 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012), is misplaced. The court in Emanuel granted the defendant's motion to dismiss the plaintiff's TCPA claim where the defendant sent a single, confirmatory text message in response to the plaintiff's text message.[1] 2013 WL 1719035, at *1. In its message, the defendant confirmed receipt of the plaintiff's text message and explained how it would treat the message. Id. at *3. That case is distinguishable from the present circumstances, where plaintiff received six prerecorded calls from defendant's ATDS following oral revocation of her consent to be called.

Defendant cites Ryabyshchuck for the proposition that context affects whether a call incurs liability under the TCPA. See 2012 WL 5379143 at *3. However, application of that principle here cuts against defendant, where defendant continued to call plaintiff despite plaintiff's 17 calls to

---

[1] "The TCPA's prohibition on automated dialing applies to both voice calls and text messages." Gager, 727 F.3d at 269 n.2; see 2012 FCC Ruling, 27 FCC Rcd. at 15398 ¶ 15; Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009).

18

defendant revoking her prior consent. In contrast, Ryabyshchuck involved a single message from the defendant confirming the plaintiff's revocation of consent. Id. at *1. For these reasons, and for those reasons described above, the court finds unpersuasive defendant's argument that the content of its calls fell outside the scope of the TCPA. Instead, the content of defendant's calls ran afoul of the TCPA's prohibition on "any" automated or prerecorded calls made to a consumer's cell phone after revocation of her consent. See § 227(b)(1)(A).

In sum, defendant's argument that the content of its call fell outside the scope of the TCPA is without merit. Therefore, defendant's motion for summary judgment on this basis must be denied.

5.  Case Scheduling

In light of the court's summary judgment determination, the court DIRECTS further case activity as follows. The court DIRECTS the parties to confer and file, within **21 days** of the date of this order, a proposed scheduling order for additional discovery and briefing on the following issues:

1) Whether any genuine issue of fact on the issue of liability remains for trial; and

2) Damages.

With respect to the first issue, based on the present record, the court gives notice that it is considering entering summary judgment in favor of plaintiff on the issue of liability. Defendant is DIRECTED to show cause why summary judgment should not be entered in favor of plaintiff on the issue of liability.

**CONCLUSION**

Based on the foregoing, defendant's motion for summary judgment (DE 17) is DENIED. The parties are DIRECTED to confer and file, within **21 days** of the date of this order, a proposed

19

scheduling order for additional discovery and briefing as specified herein. Further, for the reasons stated herein, the court hereby gives NOTICE that it is considering entering summary judgment in favor of plaintiff on the issue of liability. Defendant is DIRECTED to show cause why summary judgment should not be entered in favor of plaintiff on the issue of liability.

SO ORDERED, this the 14th day of January, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge